UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

CIVIL ACTION NO: 4:13-CV-00195-RBH

| | |
|---|---|
| REGIONS BANK d/b/a REGIONS MORTGAGE,<br><br>Plaintiff,<br><br>vs.<br><br>STEWART TITLE GUARANTY COMPANY and GINN TITLE SERVICES, LLC,<br><br>Defendant - Crossclaim Plaintiff. | **MEMORANDUM IN SUPPORT OF DEFENDANT STGC'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Stewart Title Guaranty Company ("STGC") submits the following Memorandum of Law and Authorities in support of its Motion for Summary Judgment.

### Background

Regions Bank d/b/a Regions Mortgage ("Regions Bank") seeks to recover under a Florida closing protection letter ("CPL") issued by STGC covering a mortgage interest on Florida property[1] based upon the alleged failure of Ginn Title Services, LLC ("Ginn"), the closing agent, to perfect a valid and enforceable first mortgage lien against cross-collateralized South Carolina property[2] for which no title policy or commitment was either sought by Regions Bank or issued by STGC. While not without considerable doubt, the Court may assume for purposes of this motion that Ginn failed to follow Regions Bank's written closing instructions to

---

[1] The "Florida property" is a condominium unit located in the Villas at Reunion Square, Unit 402, 7604 Cabana Court, Reunion, Florida 34747.

[2] The "South Carolina property" is a condominium unit located in the Edgewater Condominiums, Unit 721, 2180 Waterview Drive, North Myrtle Beach, South Carolina 29582.

obtain a valid first mortgage lien on the South Carolina property.[3]  However, a violation of written closing instructions as to the mortgage on the South Carolina property does not invoke "coverage" under the Florida CPL.  This is so because the Florida CPL was issued only with respect to the closing of the mortgage interest on the Florida property for which a title commitment and policy was indisputably issued.  In this regard, both the terms of the CPL and the operation of Florida law[4] require the issuance of a title policy insuring the mortgage interest

---

[3] Regions Bank contends that its written closing instructions required Ginn "to ensure that Regions acquired a valid and enforceable first lien on the South Carolina property" (Complaint, ¶ 36) and that this instruction was violated when Ginn failed "to ensure that the correct parties executed the South Carolina Mortgage" ( Complaint, ¶ 37).  Specifically, the South Carolina property was titled in the names of the individual members of SWWM, Ltd., a fact to which both Ginn and Regions Bank were on notice by virtue of an Attorney's Preliminary Opinion of Title in possession of both parties prior to closing.  *See* Complaint, ¶ 21 and Exhibit E; Broome Deposition, Exhibit 3.  Nonetheless, Regions Bank drafted the mortgage documents in the name of SWWM, Ltd. only, erroneously instructing the documents for both the South Carolina and Florida properties be signed by SWWM, Ltd., not the then-titled individual owners of the South Carolina property.  *See* Closing Instructions, Complaint Exhibit B, General Requirements No. 12 ("Loan to close in the name of SWWM Limited.") and Note and Security Documents Instructions ("Regions Bank d/b/a Regions Mortgage is providing the note, security instrument, addendums and riders, as applicable.  Please use our documents to ensure compliance with our requirements and the ultimate investor.  * * * All borrowers should sign the documents *exactly as their names are typed on the signature lines*.")(emphasis added).  This instruction to execute the South Carolina mortgage exactly as written created the "defect" making the South Carolina mortgage unenforceable since the mortgage was not in the name of the titled owners.  Apparently neither Ginn nor Regions Bank discovered or appreciated the defect created by Region Bank's own instructions.  Thus, a substantial question exists as to whether Regions Bank's conduct in creating the defect is *in pari delecto* with that of Ginn and bars it from recovery against Ginn.  *See Gold v. Old Republic National Title Ins. Co.*, 2010 Bankr. LEXIS 4203 (Bankr. Ct. E.D. Va. 2010).

[4] In a case based upon diversity of citizenship, as here, the Court must "apply the substantive law of the state in which it sits, including the state's choice of law rules."  *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004).  In South Carolina, "unless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made."  *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 436 S.E.2d 182, 184 (Ct. App. 1993); *see also Joye v. Heuer,* 813 F. Supp. 1171 (D.S.C. 1993).  Here, the CPL was issued in Florida and under terms regulated and promulgated by Florida.  For that reason the substantive law of Florida should be applied to the interpretation and application of the CPL.

2

being created in order to trigger coverage under the CPL.  Further, under Florida law, notice of claim under a CPL must be provided in writing to STGC within 90-days from the discovery of a loss within the coverage of the CPL.  Within the undisputed facts of this case, no such timely notice was given by Regions Bank and no coverage is provided by the CPL.  For either of these two reasons, STGC is entitled to the entry of summary judgment in its favor.

## Facts

SWWM, Ltd. ("SWWM") is a Pennsylvania limited liability partnership.  (Complaint ¶ 6).  Its general partner was John Molitoris and its other partners were Jay Swartz, William James and Wayde Walter.  On May 21, 2005, SWWM entered into a pre-construction sale/purchase of a condominium in Reunion, Florida (the Florida property).  When construction of the condominium was completed in early 2007, SWWM made application for a loan from Regions Bank to complete the purchase.  (Exhibit 2).  In connection with the anticipated mortgage on the Florida property, SWWM obtained a title insurance commitment/policy from STGC (Complaint Exhibit A ).  This title commitment covered only the Florida property.  STGC issued a closing protection letter on March 9, 2007.  (Complaint Exhibit D and Exhibit 1).  The text of the CPL is discussed extensively throughout this memorandum and will not be further elaborated in this factual statement.

Regions Bank performed an underwriting review of the application.  On March 16, 2007, it completed its administrative desk review appraisal value of the Florida property.  (Exhibit 4). Regions Bank disagreed with the field appraisal value, declined to recognize any value higher than SWWM's pre-construction contract price of $675,900 and imposed a requirement to cross collateralize the loan with the South Carolina property which had been identified on the loan

application as the asset of individual members.  Regions Bank never sought or obtained a title commitment or policy on the South Carolina property.  Regions Bank did not obtain a note from the partners of SWWM on the South Carolina property. Regions Bank did not request, instruct or require a conveyance of the South Carolina property to SWWM.  Prior to closing, Regions Bank had an Attorney's Preliminary Opinion of Title showing the South Carolina property was vested in the names of the partners of SWWM, not SWWM itself.  (Complaint Exhibit E).

Ginn, an approved title insurance agent for STGC, served as the closing/settlement agent. All documents were prepared by Regions Bank, who issued both General and Specific closing instructions.   (Complaint Exhibits B and C).  The mortgage prepared on the South Carolina property was drafted by Regions Bank and was in the name of SWWM.  While the closing instructions directed Ginn to obtain a first priority lien on both properties, these instructions also directed that the mortgages should be executed as drafted and all documents executed in the name of SWWM.

The closing occurred on March 28, 2007.  (Complaint, ¶ 23).  The mortgage on the South Carolina property was executed by John Molitoris on behalf of SWWM and recorded in the public records of Horry County, South Carolina.  (Complaint, ¶ 23 and Exhibit G).   The Florida mortgage and title were in SWWM's name.

Performance of the loan was poor.  By February 1, 2009, the loan was six payments and more than $28,000 in arrears.  In July 2009 Regions Bank turned the matter over to its Florida foreclosure attorneys.  On August 4, 2009, Regions Bank learned from one of the partners of SWWM that the South Carolina property had been sold by them in April, 2009. (Exhibit 5). On August 6, 2009, this information was confirmed by Regions Bank's attorneys.  (Exhibit 5).  A

4

foreclosure action was filed against SWWM on the Florida property on August 26, 2009, resulting in a deficiency of approximately $489,329.54.

On May 10, 2010, STGC received a letter from Regions Bank notifying of a claim under the CPL on the South Carolina mortgage. (Exhibit 6). The letter advised that Ginn was instructed to "guarantee a 1st lien position on" the South Carolina property and that title to the property prior to closing was in the names of Swartz, James, Molitoris and Walter. The letter claimed that Ginn should have required these individual partners to convey the property to SWWM in order for a valid first lien to exist. The letter also advised that the property had been conveyed to another individual and was secured by another mortgage.

On May 17, 2010, Melanie McDonald of STGC communicated with Paula Jackson of Regions Bank concerning the claim notice. In that exchange, McDonald requested a copy of the tile insurance or commitment on the South Carolina property and was advised by Jackson that no title insurance was required on the additional collateral. McDonald then advised Jackson "if title insurance ws not required on the additional collateral this matter is not covered." (McDonald Deposition, Exhibit 7).

### Argument

### I.

**REGIONS BANK'S MORTGAGE INTEREST IN THE SOUTH CAROLINA PROPERTY IS NOT COVERED BY THE CLOSING PROTECTION LETTER BECAUSE THAT INTEREST IS UNSUPPORTED BY THE ISSUANCE OF ANY TITLE POLICY OR COMMITMENT BY STGC.**

This is a tale of two mortgages on two different properties—one located in Florida and one located in South Carolina—but only one closing protection letter which applies only to the mortgage interest in the Florida property. STGC issued no title commitment or policy with

5

respect to the mortgage on the South Carolina property. The CPL it issued covered only the transaction in which Regions Bank's mortgage interest would be created on the Florida property. Regions Bank contends that because both mortgage transactions were temporally related and part of the same "closing," the Florida CPL must necessarily cover the creation of *both* mortgage interests since they were related to the same loan. Such a view conflicts, however, with the unambiguous language of the CPL itself which limits the CPL's application to the mortgage interest on the Florida property for which the title policy or commitment was issued. Such a view further conflicts with the public policy of Florida, embedded in its statutory and regulatory requirements regarding CPLs, which necessarily limits the Florida CPL to closing services on property located in Florida and only with respect to a Florida transaction for which title insurance issues.

### A.     Closing Protection Letters Generally

Closing protection letters (sometimes referred to as "insured closing letters") are standardized indemnity agreements from a title insurer that apply to closing services performed by the title insurer's approved title agents or attorneys on specified transactions. *Federal Deposit Insurance Corporation v. Property Transfer Services, Inc.*, 2013 U.S. Dist. LEXIS 137442 (S.D. Fla. 2013) ("CPLs are indemnification contracts under Florida law"); *Wells Fargo Bank, N.A. v. Bank of America N.A.,* 2013 U.S. Dist. LEXIS 13522 (S.D.N.Y. 2013); *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.,* 795 F. Supp. 2d 624 (E.D. Mich. 2011) ("A closing protection letter is an indemnity agreement, not an insurance policy."); *First Am. Title Ins. Co. v. First Alliance Title, Inc.* 718 F. Supp. 2d 669 (E.D. Va. 2010).

Closing protection letters are intended to indemnify solely for losses incurred (1) as a result of dishonesty or fraud by an approved agent or attorney in the handling of the lender's

funds or documents in connection with the specific transaction for which the letter is issued; and (2) the failure of the approved agent or attorney to comply with the written closing instructions of the lender to the extent the instructions relate to the status of the title to the lender's interest in the land or the validity, priority or enforceability of the mortgage on the land for which a title policy or commitment has been extended.  *See JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.,* 795 F. Supp. 2d 624 (E.D. Mich. 2011); *National Mortgage Warehouse, LLC v. Bankers First Mortgage Co.,* 190 F. Supp. 2d 774 (D. Md. 2002); J.C. Murray, *Closing Protection Letters:  What Is (And Is Not) Covered?* Practicing Law Institute, Real Estate Law and Practice Course Handbook Series, PLI No. 13949 (2008).

Closing protection letters are given to individually named lenders and recite the specific conditions under, and the extent to which, title insurers will accept liability for the acts or omissions of the approved agents or attorneys.  Typically, a CPL applies only to the particular transaction for which it is issued, is strictly limited to the parties designated in the letter and applies only when a title commitment or policy is issued covering the property interest being insured.  *See National Mortgage Warehouse, LLC,* 190 F. Supp. 2d at 783 ("the issuance of a title insurance policy is generally necessary for liability to ensue under a closing protection letter"); *Fleet Mortgage Corp. v. Lynts*, 885 F. Supp. 1187, 1190 (E.D. Wisc. 1995) ("the [closing protection] letters are generally only issued in connection with a title insurance policy or expected policy" and "only available when title insurance has been ordered from an agent in connection with a particular transaction").

For a closing protection letter to apply to a particular mortgage transaction there must be a supporting title insurance commitment or policy covering the specific mortgage interest being created to trigger the letter's indemnity protection.  *Winkler v. Lawyers Title Ins. Corp.*, 41 So.3d

7

414 (Fla. App. 2010) (escrow deposits not received in connection with a specific transaction involving issuance of a title insurance binder, commitment or policy is not covered under a CPL); *Sommers v. Smith and Berman, P.A.*, 637 So. 2d 60 (Fla. App. 1994) ("agency" relationship with title insurer does not create liability absent supporting CPL). As a matter of law, and within the undisputed facts of this case, the CPL issued by STGC for the mortgage interest to be acquired in the Florida property does not provide coverage for the mortgage on the South Carolina property.

> **B.     By its own terms, the Florida CPL unambiguously applies only to the mortgage interest on the Florida Property.**

As previously noted, CPLs are indemnification contracts under Florida law. *Federal Deposit Insurance Corporation v. Property Transfer Services, Inc.*, 2013 U.S. Dist. LEXIS 137442 (S.D. Fla. 2013); *Brinker v. Chicago Title Ins. Co.*, 2012 U.S. Dist. LEXIS 44503 (M.D. Fla. 2012). The scope of a CPL is gathered by its terms and is a question of law in the first instance for the court. As observed in *FDIC v. Property Transfer Services, Inc., supra,* in determining the meaning of a CPL:

> [A] court "must construe a contract in a manner that accords with reason and probability and avoid an absurd construction." *Seigel v. Whitaker*, 946 So. 2d 1079, 1083 (Fla. 5th DCA 2006). Moreover, courts are obligated to interpret the terms of a contract to give meaning to all of its provisions. *Ceradini v. IGT Services, Inc.*, 959 So. 2d 348, 351 (Fla. 3d DCA 2007) (internal citations omitted) ("a cardinal principal of contract construction that agreements are to be interpreted so as to give meaning to all their provisions."); *Tonfi v. Prime Homes at Villa Portofino East, Ltd*, No. 07-22952-CIV, 2008 U.S. Dist. LEXIS 49110, at **15-16 (S.D. Fla. June 4, 2009).

2013 U.S. District LEXIS 44503 at 4.

In Florida, courts construe indemnity contracts according to ordinary rules of contract construction. *See Improved Benevolent & Protected Order of Elks of the World, Inc. v. Delano,*

308 So.2d 615, 617 (Fla. Ct. App. 1975). The intent of the parties and the scope of the indemnification provision are derived from the language of the contract and the circumstances in which it was made. *Id.; see also Gibbs v. Air Canada,*, 810 F.2d 1529, 1533 (11th Cir. 1987). The terms of the indemnity contract determine whether the indemnitor is obligated to reimburse the indemnitee for a particular claim. *See Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.,* 853 So. 2d 1072, 1077 (Fla. Ct. App. 2003). Under the Florida contract rules of construction, the meaning of the CPL is to be determined from the language of the agreement itself. Here, the language of the CPL demonstrates that it applies only to the Florida property.

   1. **The CPL expressly identifies the Florida property as the sole subject for indemnity**.

The first unequivocal indication that the CPL applies only to the Florida property appears at the head of the letter when the property address of the Florida property is specifically identified as the subject of the indemnity agreement. The CPL is addressed to Regions Bank, thus identifying it as the lender to whom the indemnity agreement is being extended. The first subject line of the CPL clearly delineates that the letter is being given for the "Insured Closing Service" and for the loan involving "Buyer/Borrower SWWM, Ltd.". Identification of the Buyer/Borrower clearly identifies the loan transaction involved. The subject portion of the letter further identifies the specific property for which the indemnity letter is being given as the Florida property by providing the "Property Address: 7604 Cabana Court Unit 402, Reunion, FL 34747." This address is also the property address for the title commitment previously issued in connection with the transaction. Finally, the letter lists the approved agent, "Ginn Title Services, LLC," together with Ginn's address, to identify the approved agent for whose conduct STGC is providing indemnity protection to Regions Bank. *There is no purpose to be served by listing the property address of the Florida property other than to restrict the CPL's application to the*

9

*mortgage interest being created in Regions Bank's favor to the Florida property.* Indeed, there is no mention of the South Carolina property for which neither a title policy nor a commitment was extended. The Florida property address is provided in the heading of the letter so that it will be clear in the body of the letter that the "mortgage . . . of an interest in land" is tied specifically to the same property for which the title commitment or policy has been issued.

Regions Bank will undoubtedly contend that the "Property Address" provided in the subject line is mere surplus language, included only to identify the loan for which indemnity is being given. Such a contention, however, is implausible at best. A CPL does not cover closings of "loans" *per se*; rather, a CPL covers closings of specified real estate transactions creating a mortgage lien on specified property—in this case the closing of the mortgage on the Florida property. While a loan on the property is usually involved to create a mortgage interest in land, it is the creation of the mortgage interest in the Florida property that is the real estate transaction identified as the subject of the CPL. The addition of the Florida property address makes clear that the "mortgage (including any other security instrument) of an interest in land" referred to in the body of the letter is the mortgage on the Florida property.

Regions Bank never sought or obtained a title insurance commitment or policy on the South Carolina property or on the mortgage interest being created in the South Carolina property as additional collateral for the loan. Regions Bank never requested a CPL be issued on the South Carolina mortgage transaction. Significantly, on March 9, 2007 when the CPL was issued, the underlying transaction included only the Florida property. Regions Bank's decision to require additional collateral to proceed with the loan came only after its loan underwriters appraised the Florida property and required the borrowers to put up additional collateral to secure the debt. Thus, agreeing to indemnify for an unidentified and subsequently imposed collateral mortgage

could not have possibly been within the contemplation of the parties or intended by the letter when it was issued.[5]

## 2. **Coverage under the CPL expressly requires STGC to issue a title insurance commitment or policy covering the interest in land being secured by the lender's mortgage.**

The language of the CPL in this case clearly and unambiguously requires a title insurance commitment or policy on the lender's mortgage interest being created by the real estate transaction. It does this in two ways: (1) by triggering coverage only when title insurance is specified for the specific transaction creating the mortgage interest—*i.e.,* the specific property identified by the CPL; and (2) by expressly limiting the CPL's coverage for the approved agent's failure to follow written closing instruction to only those relating to the creation of the mortgage interest specified by the CPL—*i.e.*, the Florida property.

The first paragraph of the CPL states:

> *When title insurance of Stewart Title Guaranty Company is specified for your protection in connection with closings of real estate transactions in which you are . . . a lender secured by a mortgage (including any other security instrument) of an interest in land*, the Stewart Title Guaranty Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with *such closings* when conducted by said issuing agent or Approved Attorney when such loss arises out of
>
> 1. Failure of said Issuing Agent or Approved Attorney to comply with your written closing instructions *to the extent that they relate to* (a) the status of the title to *said interest in land* or the *validity, enforceability and priority of the lien of said mortgage on said interest in land*, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of

---

[5] STGC will *not* issue a CPL covering any property for which title insurance or a commitment has not issued. *See* STGC Bulletin, Exhibit 8.

> such other documents, or (c) the collection and payment of funds due you, or
>
> 2. Fraud or dishonesty of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing.

CPL, Complaint Exhibit D (emphasis supplied).

The italicized clause of the first sentence of the CPL unequivocally requires a lender to purchase title insurance from STGC *on the specific mortgage interest being created in the transaction* in order to trigger coverage under the CPL. Purchasing a policy covering the specific transaction is the triggering mechanism for indemnity under a CPL and without a policy or commitment no coverage exists. *See Winkler v. Lawyers Title Ins. Corp.*, 41 So. 3d 414 (Fla. Ct. App. 2010); *Sommers v. Smith and Berman, P.A.*, 637 So. 2d 60 (Fla. Ct. App. 1994); *see also Fleet Mortgage Corp. v. Lynts*, 885 F. Supp. 1187, 1190 (E.D. Wisc. 1995) (CPLs are "only issued in connection with a title insurance policy or expected policy."); *Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*, 720 F. Supp. 2d 978, 1004 (N.D. Ill. 2010).

Regions Bank contends that the purchase of title insurance on the Florida property somehow supports the application of the CPL to the closing instructions relating to the South Carolina property. Specifically, it contends that its purchase of a lender's policy for the Florida property extends that protection to the South Carolina property. This view is necessarily based on a partial or incomplete reading of the italicized clause of the first sentence of the paragraph: "When title insurance of Stewart Title Guaranty Company is specified for your protection in connection with closings of real estate transactions . . . ." But such a reading fails to take into account the remaining language that the title insurance must be specified for "closings of real estate transactions in which you are to be … a lender secured by a mortgage (including any other security instrument) of an interest in land." It is this additional language that Regions Bank's

contentions improperly ignore. While Regions Bank did intend to acquire a "mortgage of an interest in land" with respect to the South Carolina property, no title insurance was specified for Regions Bank's protection by STGC and no coverage can be triggered by the CPL since only the Florida property transaction was insured by STGC.

The "mortgage of an interest in land" covered by the CPL can only mean the mortgage interest insured by the title insurance commitment or policy. This is so because two specific requirements for coverage are included in the indemnification clause for the agent's failure to follow written closing instructions. First, the identification of the property in the subject line of the letter as the Florida property defines what mortgage interest constitutes "*such* interest in land" and the "lien of *said* mortgage on *said* interest in land." Indeed, the very purpose for setting out the property address of the parcel to be mortgaged is to specifically define "said mortgage" and "said interest in land." Not only does this language further validate the use of the property address to identify what mortgage interest is being protected by the CPL, but it also rebuts any assertion that the property address is no more than a means of identifying the loan involved. Second, the "lien of said mortgage on said interest in land" can only refer to the mortgage interest for which "title insurance of Stewart Title Guaranty Company is specified." An agent's failure to follow written closing instructions is covered by the CPL only "to the extent that [the failures] relate to (a) the status of the title to *said* interest in land or the validity, enforceability and priority *of the lien of said mortgage on said interest in land ....*" Under the plain language of this paragraph, the title insurer will only indemnify the lender for loss due to the failure of the settlement agent to follow the lender's written closing instructions *only to the extent the failure affects the validity, enforceability or priority of the lien of the mortgage being insured by the title insurer.*

13

The plain language of the CPL in this case yields but one valid interpretation: The CPL's indemnity protection applies only to the validity, enforceability and priority of the mortgage lien covered by the title insurance commitment. The CPL expressly identifies the property as the Florida property and, in context, is activated only when STGC specifies title insurance for the lender's protection with respect to that property. Finally, as it pertains to the approved agent's failure to follow written closing instructions, the CPL will indemnify only for those losses that relate to the "validity, enforceability and priority of the lien of *said mortgage on said interest in land*." To conclude otherwise tortures and distorts both the meaning and purpose of the CPL since it would require a title insurer to indemnify the lender for failures affecting the validity, enforceability and priority of mortgage liens that are not the subject of a title insurance commitment or policy.

### B.     **The CPL in this case is a promulgated form required by the State of Florida through regulation and statute, applies only to property located in Florida and can be issued only when a title insurance commitment or policy exists covering that interest.**

Under Florida law, the terms and conditions of CPLs are legislatively mandated. Title insurers may issue indemnity letters only by an instrument approved as to form and content by the Florida Office of Insurance Services ("OIS"):

> 627.786   Transaction of title insurance and any other kind of insurance prohibited
>
> (1)  An insurer may not transact title insurance and any other kind of insurance in this state.
>
> \*\*\*
>
> (3)  Subsection (1) does not preclude a title insurer from providing instruments to any prospective insured, in the form and content approved by the office, under which the title insurer assumes liability for loss due to the fraud of, dishonesty of, misappropriation of funds by, or failure to comply with the

14

> written closing instructions by, its contract agents, agencies, or approved attorneys in connection with a real property transaction for which the title insurer is to issue a title insurance policy.

*Fla. Stat. Ann.* § 627.786 (*See* Exhibit 9, attached). Section 627.786(3) specifies that such instruments can only be provided "in connection with a real property transaction for which the title insurer is to issue a title insurance policy" and thereby reinforces the reading of the CPL to proscribe its application to any transaction not involving the issuance of a title insurance policy or commitment. In Florida, a title insurer is prohibited from issuing CPLs for real estate transactions in which title insurance is not also issued for the transaction.

The form and content of the CPL, including that used by STGC and the subject of this action, was actually promulgated by the Florida OIS through regulation. *See Fla. Admin. Code* § 69O-186.010 (*See* Exhibit 10). STGC's CPL is compliant with the promulgated Florida form, including the language preserving the requirement that the CPL can only be used when a title policy is issued for the transaction. The Florida-promulgated CPL is for use exclusively within Florida for transactions involving policies issued on Florida property. It is not intended for extraterritorial effect and is not used for transactions in South Carolina.

Finally, to rebut any claim that the term "closing" has a broad meaning as apparently ascribed to it by Regions Bank, Florida law defines "closing services" restrictively and as encompassing only a "real estate closing transaction in which a title insurance commitment or policy is to be issued:"

> As used in this part, the term:
>
> (1)(a) "Closing services" means services performed by a licensed title insurer, title insurance agent or agency, or attorney agent in the agent's or agency's capacity as such, including, but not limited to, preparing documents necessary to close the transaction, conducting the closing, or handling the disbursing of funds related

15

> to the closing *in a real estate closing transaction in which a title insurance commitment or policy is to be issued.*

*Fla. Stat. Ann.* § 627.7711(1)(a) (Exhibit 11).

Under the Florida regulatory scheme, a title insurer is prohibited from issuing a CPL in any Florida real estate transaction unless a title insurance commitment or policy is to be issued. The rationale for prohibiting or restricting the use of CPLs is that their issuance results in the unauthorized writing of fidelity or surety coverage and violates the monoline nature and scope of the title insurer's business activities permitted by Florida. Florida prohibits a title insurer from engaging in any other line of insurance. Thus, the exception provided in Section 627.786(3) expresses the Florida public policy that "the issuance of CPLs, which assure as to certain actions of the title insurer's own policy-issuing agent or approved attorney, do not violate the state's monoline statute *so long as a policy is being issued in connection with the subject transaction.*" J.C. Murray, *Closing Protection Letters: What Is (And Is Not) Covered?* Practicing Law Institute, Real Estate Law and Practice Course Handbook Series, PLI No. 13949 at 14(2008) (emphasis added). If the CPL covers closing transactions for which no title insurance is to be issued, the CPL would violate the provisions of the Florida regulatory scheme.

The plain language of the CPL involved in this case—promulgated by the Florida Office of Insurance Services—is specifically designed to insure that CPL coverage applies only to real estate transactions in which a title policy or commitment is issued. This statutory scheme and purpose provides the necessary backdrop for interpreting the Florida CPL in this case. With the understanding that the CPL issued to Regions Bank was restricted to the Florida property, the letter is compliant with Florida law. The interpretation of the CPL urged by Regions Bank—that one title commitment or policy will support multiple mortgage transactions for properties not

themselves covered by a title policy if performed contemporaneously—offends both the language used in the promulgated CPL and the Florida regulatory scheme.

## II.

### REGION BANK'S CLAIM IS UNTIMELY AND WAS NOT REPORTED TO STGC WITHIN 90 DAYS OF THE DISCOVERY OF THE LOSS AS REQUIRED BY CONDITION D OF THE CPL.

STGC is entitled to summary judgment even if it were determined that the CPL somehow provides coverage for Ginn's "violation" of Regions Bank's closing instruction that a "valid and enforceable first lien" be acquired on *both* the South Carolina and Florida properties. This is so because first notice of loss was received by STGC on May 10, 2010, more than 90 days after Regions Bank's discovery of its loss giving rise to the allegedly covered claim under the CPL. As a consequence, no coverage exists for the alleged defect in the South Carolina mortgage interest.

The CPL makes clear that any claims for loss under the indemnity agreement must be made in writing promptly to STGC and in any event "within 90 days from the date of discovery of such loss":

> Claims of loss shall be made promptly to the Stewart Title Guaranty Company at its principal office at P.O. box 2020, Houston, Texas 77202. When the failure to give prompt notice shall prejudice the Stewart Title Guaranty Company, then liability of the Stewart Title Guaranty Company hereunder shall be reduced to the extent of such prejudice. *The Stewart Title Guaranty Company shall not be liable hereunder unless notice of loss in writing is received by the Stewart Title Guaranty Company within ninety (90) days from the date of discovery of such loss*.

CPL, CONDITIONS AND EXCLUSIONS ¶ D (Exhibit 1)(emphasis added).

A plain reading of the notice provision of Condition D of the CPL is that any liability under the CPL is barred if notice of loss is not given within 90 days of the discovery of loss. This notice requirement is absolute and does not require the existence of prejudice. The provision also requires prompt notice to be given within the 90 day period and will reduce the indemnity to the extent the notice is not prompt and causes prejudice. However, notice after the 90 day period is absolute and requires no showing of prejudice.

In *FDIC v. Property Transfer Services, Inc.*, 2013 U.S. Dist. LEXIS 137442 (S.D. Fla. 2013), the court was confronted by this same issue and concluded that the 90 day provision is an absolute bar to liability:

> The FDIC argues that liability should be reduced to the extent of prejudice regardless of whether notice was received within 90 days of the discovery of loss. Yet that interpretation effectively nullifies the 90 day provision of the CPLs. Thus, the CPLs must be interpreted so that the 90 day notice provision in the CPLs constitutes an absolute bar to liability regardless of prejudice and whether the FDIC may pursue its claims depends on when the loss was discovered in this matter.

*FDIC v. Property Transfer Services, Inc.* at Page 4; *see also FDIC v. Attorneys' Title Ins. Fund, Inc.*, 2011 U.S. Dist. LEXIS 157300 (S.D. Fla. 2011) (holding "FDIC's notice of loss to the Fund, received in May 2009 and well over ninety days after [the date of discovery], is untimely" but reserving for additional briefing the prejudice issue). Thus, STGC cannot be held liable under a CPL unless notice is properly received by it within 90 days of Regions Bank's discovery of a potential loss and claim.

Within the undisputed facts of this case, Regions Banks' written notice of a claim of loss under the CPL was first received by STGC on May 10, 2010. *See* Exhibit 6. The loan "went south quickly" and was more than $28,000 in arrears by early-2009. Purser Deposition at 20-22 (Exhibit 12). Regions Bank knew that it had sustained a loss in connection with the transactions

when SWWM defaulted on its Note by February 1, 2009. *See* Purser Deposition at 21 (Exhibit 12). In August, 2009, Regions Bank learned that the South Carolina property had been sold by the individual members of SWWM, Ltd. and was no longer available as security for its loan. Specifically, on August 4, 2009, a representative of Regions Bank attempting to collect the debt spoke to one of SWWM's principals and was advised that SWWM and its members were "unable to pay" further on the loan and that they has previously sold the South Carolina property. *See* Consolidated Notes Log, Exhibit 5. On August 6, 2009, the borrower's information was confirmed by Regions Bank's own foreclosure attorney's preliminary search of the South Carolina title:

> In reviewing the mortgage and performing some preliminary searches on the Horry County web-site we have found that [the South Carolina] property referenced in the mortgage Ashley e-mailed earlier, was never owned by SWWM, Ltd, the borrower listed on the mortgage. It was owned by several men who it appears were the partners of SWWM, but they held title as individuals, not as the company. SWWM, Ltd., has only held title to one property in Horry County, Unit 522 Edgewood. Both properties have since been transferred to individuals and are no longer in the name of SWWM or its members.

*See* Consolidated Notes Log, Exhibit 5; Mayersohn Memo to Don Wallace, Exhibit 13.

Regions Bank instituted a foreclosure action on the Florida property on August 26, 2009, ultimately resulting in the sale of the Florida property by the bank and a deficiency of $489,329.54 on the loan. Regions Bank knew at least by August 4, 2009 that it was unable to foreclose on the South Carolina property because the title was vested in the individual members of SWWM, Ltd. and had been sold. Thus, no later than August 26, 2009, when it filed the foreclosure action against the Florida property, Regions Bank had sufficient knowledge that it had sustained a loss on the transaction and that it would not be able to foreclose the South Carolina mortgage. Yet Regions Bank did provided no notice to STGC as required by the CPL

19

until May 10, 2010—substantially more than 90 days after discovery of the loss potentially covered by the CPL.  Under the express terms of the notice provision, Condition D, no liability exists under the CPL.

STGC submits that the notice provision of the CPL does not require any showing of prejudice to produce this result.  However, if prejudice were required, STGC further submits that the sale of the South Carolina property by the individual members of SWWM, Ltd., with knowledge of the existence of the mortgage, constitutes fraud and should subject those individuals to civil liability apart from any deficiency judgment against SWWM, Ltd.; however, Regions Bank's late notice and failure to take steps to pursue that civil remedy have now been foreclosed by the three-year statute of limitations.  Assuming that the CPL covers the South Carolina mortgage and assuming that the notice provision requires a showing of prejudice, Regions Bank's delay prejudiced STGC to the extent any fraud action or subrogation could be asserted against the individual members of SWWM, Ltd. and/or SWWM, Ltd.

## Conclusion

For the foregoing reasons, Stewart Title Guaranty Company respectfully submits that its motion for summary judgment should be granted.

/s/   Thomas C. Salane
Thomas C. Salane (Fed. ID# 3703)
Turner Padget Graham & Laney P.A.
Post Office Box 1473
Columbia, S.C. 29202
Telephone:  (803) 254-2200
Facsimile:  (803) 400-1526
Email:  tsalane@turnerpadget.com

ATTORNEYS FOR DEFENDANT
STEWART TITLE GUARANTY COMPANY

Columbia, S.C.

April 18, 2014